[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The defendant mother filed a post-judgment motion to modify primary residence, visitation and child support on January 5, 2001. She also filed motions for a finding of contempt against the plaintiff on April 16, 2001 and October 17, 2001, as well as a motion entitled "Request for Reimbursement" on November 30, 2001.
The plaintiff father filed contempt motions against the defendant on January 23, 2001, March 30, 2001 and April 17, 2001.
All of the foregoing motions were heard by this court at a contested hearing which was conducted on November 27, 2001, November 29, 2001 and November 30, 2001. The plaintiff represented himself at this hearing. The defendant appeared and was represented by her attorney. The interests of the minor child were represented by her court appointed guardian ad litem, Attorney Rhonda M. Morra.
The court has carefully considered all of the evidence introduced at hearing and makes the factual findings indicated below based upon a preponderance of the evidence.
 FACTUAL FINDINGS
The plaintiff and defendant were married on April 4, 1994 and have one minor child, Amanda Suzanne Oborski, who was born on December 13, 1994. The plaintiff filed for dissolution of marriage on August 20, 1996 and the marriage was dissolved by a judgment of the court (Moore, J.) on December 21, 1998.
The dissolution decree awarded the plaintiff and defendant joint custody of Amanda. No designation was made in the judgment concerning the child's primary residence. Based upon an agreement of the parties, the court ordered a shared parenting arrangement which essentially provided that the child would spend an equal amount of time with each parent. CT Page 16597
The parties' relatively short marriage has been followed by long-term, "high conflict" family relations litigation. The parties have filed numerous post-judgment motions since the date of dissolution.
At the time of dissolution, both parties resided in Manchester. The plaintiff now lives in Springfield, Massachusetts. The defendant resides in South Windsor, Connecticut.
On September 7, 2000, the court (Gruendel, J.), ordered that the minor child would attend pre-school/daycare for the 2000-2001 academic year in Springfield. The plaintiff enrolled Amanda at Trinity School in that city. The defendant subsequently filed the instant motion to modify primary residence, in which she requested that the child attend school in South Windsor. There was a disagreement between the parties as to whether the child would attend elementary school in Springfield or South Windsor during the present 2001-2002 academic year.
A hearing on that issue commenced before the court (Prestley, J.) in July, 2001. At that time, Judge Prestley issued temporary orders and ruled that a hearing de novo on the issue of school enrollment/primary residence would be held at a future date. On an interim basis, Judge Prestley ordered that the minor child would be enrolled by the mother in the South Windsor school system.
Amanda has attended the Eli Terry Elementary School in South Windsor from the start of the school year in September through the present time.
The evidence at hearing established that she is now adjusting well at that school and is making good academic progress.
The evidence at hearing also established that Amanda has a close relationship with each parent. Both parties volunteer at the child's South Windsor school and are extremely involved in the child's upbringing and day to day activities. The court finds that each parent loves Amanda very much and makes an important contribution to the child's well-being.
Unfortunately, the parties agree on very little pertaining to Amanda. They have each made unilateral decisions about the child without consulting the other, and they have continued to quarrel about the child both in and out of court.
Based on the evidence at hearing, the court finds that the parties have had major difficulties when they met to exchange the child. These transfers frequently take place at a location halfway between the father's home in Springfield, and the mother's residence in South CT Page 16598 Windsor. The current parenting arrangement has the child living at both homes for approximately one half of each week. This necessitates that the child be driven early in the morning from Springfield to school in South Windsor when the child is with the father during the week.
The plaintiff and the defendant have lodged reciprocal complaints against each other about numerous acts of lateness and other problems related to meeting at the designated exchange site. Each has also accused the other of argumentative and discourteous behavior at the exchanges. These reciprocal allegations constitute the primary basis of the parties' various contempt motions.
The court finds that each party has engaged in conduct that has made the exchanges of the child unusually problematic. The court also finds, given the demonstrated inability of the parties to work harmoniously at transferring the child, that the frequency of these exchanges should be reduced.
Although the plaintiff opposed the child's enrollment in the South Windsor school system and originally wanted the child to attend elementary school in Springfield, he modified that position at the time of hearing. In a proposed parenting plan dated October 24, 2001, the plaintiff suggested that "[t]he child's town of residence for purposes of school enrollment shall be that of the mother." (See plaintiff's Exhibit 6.)
While the parties are now in accord that Amanda may continue to attend school in South Windsor, they disagree concerning what parental access schedule should be implemented during the academic year. The plaintiff suggests a continuation of the shared parenting arrangement which basically divides the child's time equally between each parent's home.
Maryanne Reid-Gill, a family relations counselor, and Attorney Rhonda Morra, the child's guardian ad litem, both testified at trial. Each also submitted written recommendations to the court. The family relations counselor and the guardian ad litem have unanimously recommended that the father not have overnight access with the child during the school week. They opined this change would reduce the number of times the parties would have to exchange Amanda, and spare her from long early morning rides on school days. However, both Ms. Reid-Gill and Attorney Morra recommend that the shared parenting arrangement continue and that the child spend approximately the same amount of time with each parent annually. They found that Amanda has a close bond with each parent, and believe that it is in her best interests to have equal access to both her mother and father. They recommended that the father have more extensive access with the child during the summer, in order to compensate for the CT Page 16599 diminished number of overnight access periods during the academic year, and in order to effectuate a true "shared parenting" schedule.
With a few minor exceptions, the defendant is in accord with the recommendations of the family relations counselor and guardian ad litem. The plaintiff objects to those proposals and requests a continuation of the orders that the child split the school week between each parent's home.
The court found the testimony of the guardian ad litem and family relations counselor to be credible, and accords their professional recommendations great weight.
 FINDINGS
Individually, both the plaintiff and the defendant have very positive qualities as parents. They have a close bond with their child, who loves both of them very much. Fortunately, the minor child has thus far been unaffected by the rancorous relationship of the parties. The court has carefully considered the recommendations proposed by the plaintiff, the defendant, the guardian ad litem and the family relations counselor. The court agrees, in light of the circumstances which have existed since September 2001, that it is now in Amanda's best interests that she continue to attend school in South Windsor.
The court also finds that it is in Amanda's best interests to minimize the contentious exchanges between the parents and the child's early morning travel to school. This constitutes a material change in circumstances. The court finds that the plan submitted by the guardian ad litem under date of October 23, 2001 contains the parental access schedule which is best-suited to the child's needs.[1] Accordingly, the defendant's motion to reopen and modify the judgment is hereby GRANTED,
as follows:
The parties shall continue to share joint legal custody of the minor child. The child's town of residence, for educational purposes, shall be the town in which the mother resides.
The parties shall adhere to a shared parenting access schedule in accordance with the following:
A. School Year. The father shall have parenting time with the minor child in accordance with the following four week alternating schedule:
1. Weeks 1 and 3: the father shall parent the child from Friday's pick up at school until Sunday evening at 7:30 p.m. The father shall also CT Page 16600 parent the child on Thursday from pick up at school until 7:30 p.m.
2. Week 2: The father shall parent the child from Friday's pick up at school until Saturday at 3:00 p.m. The father shall also parent the child on Thursdays from pick up at school until 7:30 p.m.
3. Week 4: The father shall parent the child from pick up at school until 7:30 p.m. on Tuesday and Thursday evenings.
4. The father shall also have other access with the child at such times as the parties may mutually agree.
5. The mother shall parent the child at all times not designated as father's parenting time.
B. Sunmer. The mother shall have parenting time with the minor child in accordance with the following four-week alternating schedule:
1. Weeks 1 and 3: The mother shall parent the child from Friday at 5:00 p.m. until Sunday evening at 7:30 p.m. The mother shall also parent the child on Wednesdays from 4:30 p.m. until 8:30 p.m.
2. Week 2: The mother shall parent the child from Friday at 5:00 p.m. until Sunday at 3:00 p.m. The mother shall also parent the child on Wednesdays from 4:30 p.m. until 8:30 p.m.
3. Week 4: The mother shall parent the child from 4:30 p.m. until 8:30 p.m. on Monday and Wednesday evenings.
4. The mother shall have access at such other times as the parties may mutually agree.
5. The father shall parent the child at all times not designated as mother's parenting time.
On November 29, 2001, while the hearing was in progress, the parties entered into a "partial agreement" which was submitted in writing to this court. In that agreement the parties made extensive provisions for parental access on holidays, and during school and parental vacations. The agreement also contained certain other miscellaneous provisions. The court approved those agreements on November 29 and ordered that the dissolution judgment be modified to reflect same. The court orders that the specific provisions of the November 29 agreement be incorporated by reference in these orders.
Except as specifically modified by this decision, or the orders entered CT Page 16601 by agreement on November 29, 2001, all other unmodified orders and provisions of the dissolution judgment remain in full force and effect.
The court has considered the defendant's motion for an order of child support. At hearing, it was established that the plaintiff was unemployed, but expected to resume employment shortly. A financial affidavit submitted to the court by the plaintiff on November 30, 2001 indicated that he has no current income, but believed that he would receive net weekly income of $300.00. The plaintiff has experience as a truck driver and has in the past earned approximately $14.00 per hour. The defendant earns net weekly wages of $231.00 per week from her part-time employment. Given the court's order continuing a shared parenting arrangement, the court does not find, at this time, that a material and substantial change in financial circumstances has been proven. The court DENIES the defendant's motion for modification with respect to child support. However, the court orders that the parties exchange with each other, on April 15 of each year, their federal income tax returns and supporting W-2 form documentation for the prior tax year.
The court finds the plaintiff owes the defendant the sums set forth in her motion for reimbursement and GRANTS that motion. The court orders that the plaintiff reimburse the defendant the total sum of $62.95 within thirty (30) days of the date of this decision.
With respect to all of the various pending contempt motions, the court finds that both the plaintiff and the defendant have acted in a discourteous and contentious manner toward each other. In doing so they have lost sight of the best interests of the minor child. They have also failed to consider the impact upon Amanda which occurs each time the child witnesses such conduct. The court finds that neither party has proven contempt by clear and convincing evidence and therefore DENIES all of those motions.
The court notes that the parties are currently enrolled in the "Peace Program" through our family relations office. The court orders that each party continue to participate in that program in order to maximize their communication and minimize their level of conflict.
SO ORDERED.
Dyer, J.